## BELL v. SHULTZ et als.

PLAINTIFF had a flour mill run by water conveyed through a ditch and flume made by him, the water being turned into the ditch by a dam erected by him across a creek. Defendants and others had mining claims on the creek above the mill and dam, and the tailings, slum, gravel, etc., flowing from these claims through defendants' tail race into the creek, covered up the dam and partially filled up the creek and ditch of plaintiff. Plaintiff then built another dam lower down, so as to turn the water of the creek into his ditch at a point where it was not filled up with slum, etc. Defendants cut away and destroyed portions of this latter dam, and threaten to do so as often as plaintiff rebuilds. He sues for damages and perpetual injunction. On the trial, plaintiff, having shown that his ditch was partially filled up by said slum, etc., asked a witness: "What effect did the running of slum, etc., by defendants *and other miners above*, have upon plaintiff's race." Defendants objected, on the ground that they were not responsible for the acts of other miners. Overruled. *Held*, that the question was proper; that it might be impossible for the witness to assign any specific effect to the individual acts of those contributing, by the obstructions complained of, to the general damage done plaintiff's race; but that on cross-examination all the facts could be elicted, and proper instructions would protect defendants from any responsibility, except what they had incurred by their own acts.

APPEAL from the Fifth District.

Action for damages for destroying portions of plaintiff's dam and for perpetual injunction against future trespasses.

Plaintiff located a flour mill on Wood's creek in 1854, and had a dam across the creek, above the mill, so as to turn the waters of the creek into a ditch or race dug by him and those under whom he claimed, and leading to and running the mill. Defendants located mining claims on the creek above the dam in 1857, and the tailings, slum, etc., from these claims flowed into the creek and into the

ditch of plaintiff. Plaintiff's ditch having become partially filled with slum, etc., he erected in July, 1860, a second dam lower down on the creek, so as to turn its waters into his ditch at a point where it was not filled up with the slum. From 1857, to the time plaintiff built this second dam, defendants were able to work their claims; but from about two weeks after its erection, defendants could not work their claims in consequence of the backing up of the tailings, etc., upon their sluice. There was conflicting evidence as to whether plaintiff's dam was the cause of backing up the tailings. The creek between the old dam and defendants' claims had been rapidly filling up for a few years past. Other evidence is immaterial. Plaintiff then offered to show that, in consequence of the filling up of said creek and ditch by the refuse of mining operations thrown in it by defendants and others, it became necessary for him to move his original dam and construct the one lower down; and to this end asked a witness: "What effect did the running in of slum, etc., by defendants and other miners above have upon plaintiff's race?" Defendants objected to the question, on the ground that they had nothing to do with the acts of other miners, and were not responsible for them. Overruled, defendants excepting; and the witness answered that the effect was to fill up said creek and plaintiff's original race to a large extent, and render it necessary for him to erect another dam lower down the creek, at a point where his race had not been filled up. Other witnesses gave similar testimony, defendants excepting. Verdict and judgment for plaintiff—a perpetual injunction being granted. Defendants appeal.

*H. P. Barber*, for Appellants.

*E. F. Hunter*, for Respondent.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

We do not see any injury done the defendants by the question to which they objected. It is true, that the defendants are not responsible for the acts "of the other miners" referred to in the question; but it might have been impossible to assign any specific effect

to the individual acts of those who contributed by the obstructions spoken of to the general damage done plaintiff's race. If a dozen men each throw a stone into a ditch, though it may be easy to see what the effect of the whole is on the ditch or the flow of the water, it might be impossible for a witness to answer what was the separate influence of any one stone or that cast by any one person. The cross-examination would easily bring out the facts, and appropriate instructions from the Court would protect the defendant from any responsibility except what he had incurred by his own acts.

Judgment affirmed.